AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the

District of Kansas

**FILED**
**U.S. District Court**
**District of Kansas**

01/13/2026

**Clerk, U.S. District Court**
**By:__AS__Deputy Clerk**

| | |
|---|---|
| In the Matter of the Search of:<br>*(Briefly describe the property to be searched or identify the person by name and address)*<br><br>Small black safe with a keypad on the front face located at the Wichita Police Department at 1211 S. Emporia Street, Wichita, KS, as further described in Attachment A. | }<br>}<br>}<br>}<br>}<br>}    Case No.    26-6005-GEB |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

Small black safe with a keypad on the front face located at the Wichita Police Department at 1211 S. Emporia Street, Wichita, KS, as further described in Attachment A.

located in the **DISTRICT OF KANSAS**, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

✓ evidence of a crime;

✓ contraband, fruits of crime, or other items illegally possessed;

✓ property designed for use, intended for use, or used in committing a crime;

a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841 | Possession with Intent to Distribute, and Distribution of, Controlled Substances |
| 21 U.S.C. 846 | Conspiracy to Possess and to Distribute Controlled Substances |
| 18 U.S.C. 922(g)(1) | Possession of a Firearm by a Convicted Felon |

The application is based on these facts:

See Attached Affidavit

✓ Continued on the attached sheet.

Delayed notice of_____days (give exact ending date if more than 30 days:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Gage Teberg*
*Applicant's signature*

Gage Teberg,  SA Drug Enforcement Administration
*Printed name and title*

Sworn to before me and signed in my presence via FaceTime.

Date:    1/13/2026

*Gwynne E. Birzer*
*Judge's signature*

HONORABLE GWYNNE E. BIRZER, U.S. Magistrate Judge
*Printed name and title*

City and state: Wichita, Kansas

## ATTACHMENT A

*Property to be searched*

The property to be searched is black safe, further described as a black safe with a keypad on the front and located at the Wichita Police Department property and evidence holding facility.





## ATTACHMENT B

*Property to be seized*

1. U.S. Currency or negotiable items; books, records, receipts and/or papers relating to the transportation, ordering, sale or distribution of substances in violation of State and Federal Controlled Substances Acts;

2. cellular telephone bills-records-itemized telephone call sheets, cellular telephones phone records;

3. records or lists of receipts, cash; bank account statements; or financial account statements;

4. safety deposit box keys and or records of existence;

5. tax records;

6. videos or photographs that depict use or possession of controlled substances and/or association with known and suspected drug traffickers;

7. records to indicate control/ownership of **SUBJECT SAFE**;

8. controlled substances, including methamphetamine, cocaine, and fentanyl;

9. firearms; and

10. drug paraphernalia.

## **AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, Gage Teberg, being first duly sworn, hereby depose and state as follows:

### **INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search a small black safe with a keypad on the front, hereinafter **SUBJECT SAFE**, further described in Attachment A, for the things described in Attachment B.

2.      I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

3.      I am a Special Agent with the Drug Enforcement Administration (DEA) and have been since April 2019. As a Special Agent, I am an investigator or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offences enumerated in Title 18, United States Code, Section 2516. Specifically, as a DEA Special Agent, I am charged with the duty of enforcing any and all Title 21 violations under the Controlled Substances Act. I attended the Drug Enforcement Administration academy located in Quantico, Virginia for approximately nineteen weeks. During my time at the academy, I received specialized training in Drug Identification, Undercover and Surveillance Practices, Confidential Source Management, Report Writing, as well as extensive legal training.

4.      During the course of my law enforcement career and employment with the DEA, I have participated in numerous surveillance operations including physical surveillance, wire surveillance, and electronic surveillance. I have also interviewed numerous confidential sources ("CSs"), cooperating witnesses ("CWs"), and defendants regarding various criminal activities, including narcotics trafficking. These interviews have included discussions of the use and meaning of code words to conceal criminal activity. I have testified at trial. I have also written reports and analyzed records and documents. Through my assignment with the DEA, I have gained knowledge in the use of various investigative techniques, including the use of physical surveillance, undercover agents, confidential sources, cooperating witnesses, controlled purchases of illegal narcotics, electronic surveillance (to include T-III operations), consensually monitored recordings, investigative interviews, trash searches, mail covers, financial investigations, grand jury subpoenas, and the execution of federal search and arrest warrants. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations Title 18 United States Code, Section 922(g)(1) (Possession of a Firearm by a Convicted Felon) and of the Controlled Substances Act, including Title 21, United States Code, sections 841 (Possession with Intent to Distribute, and Distribution

2

of, Controlled Substances) and 846 (Conspiracy to Possess and to Distribute Controlled Substances) have been and are being committed.

6.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

7.      On November 30, 2023, at approximately 2:30 PM, Wichita Police Department (WPD) SGT Bradley Elmore was contacted by phone by WPD Officer Amber Rosenboom. SGT Elmore is assigned as Officer Rosenboom's supervisor with Domestic Violence Intervention Reduction Team (DVIRT). Officer Rosenboom advised that she was continuing a follow up on a domestic violence case that was reported on 11/24/2023 under WPD cases 23C156644 and 23C156805 reported on 11/24/2023 along with WPD case 23C157349 reported on 11/25/2023. On these cases, Hannah Snyder reported that she was living with Elliott Kyles and he had a history of threatening her with a firearm and physically abusing her many times. Snyder was in a local shelter for domestic violence survivors at the time.

8.      On the same day, Officer Rosenboom said she was contacted by a Wichita shelter for domestic violence survivors due to Kyles continuing to make threats toward Snyder and her family.  Additionally, SGT Elmore was made aware that Kyles had a misdemeanor warrant for his arrest from the Domestic Violence (DV) threats he made to Snyder under WPD 23C156805.  SGT Elmore advised Officer Rosenboom to contact Kyles by phone and advise him they had one of his vehicles in possession and would meet him at Quik Trip at 1010 E. Douglas to return Kyles' car

3

to him. SGT Elmore told Officer Rosenboom to do this because SGT Elmore wanted us to be able to arrest Kyles for his warrant.

9. SGT Elmore went to 1010 E. Douglas and observed Kyles in the parking lot under arrest by WPD officers. Kyles was transported to jail and booked in by Officer Rosenboom and Officer Hoofer for his warrant. Officer Hoofer said Kyles called an unknown male and told him to "let his dogs out" at his house. Prior to this arrest, SGT Elmore was aware that Snyder also provided information to WPD Det. Mark McKee regarding drug trafficking activities of Kyles. SGT Elmore contacted Det. McKee and informed him of the situation with the vehicle and the arrest of Kyles.

10. At approximately 4:00 PM, Det. McKee contacted SGT Elmore by phone. Det. McKee said he talked with Snyder, and she requested the assistance of WPD in going to her house at 4092 E. Dunham St. to retrieve her personal belongings. This home is also shared with Kyles. Det. McKee asked SGT Elmore to contact Snyder about this. This is a service the DIVRT team has provided in the past to survivors or victims so they can safely obtain their property.

11. SGT Elmore contacted Snyder and Snyder said when she left her house on E. Dunham to go to a shelter, she left everything, to include her identification, social security card, money, clothing, and a computer. Snyder said since Kyles was in jail she thought it would be a good time to go to the house and see if she could get these belongings back. Snyder said she still had a key to the house. SGT Elmore told Snyder WPD could go to the house with her, but they could not force anyone there to let us in or give Snyder belongings. WPD Officers could just be

4

there to protect her from further abuse. SGT Elmore told Snyder he was concerned someone may be at the house, especially since Kyles called someone and told them to let his dogs out. Snyder said this maybe a felon that is usually armed that works with Kyles. SGT Elmore told Snyder if this person is at the house and does not answer the door or is uncooperative, they would have to leave because there are no laws SGT Elmore could enforce to make anyone give Snyder her personal belongings. Snyder said she understood this.

12. Snyder met SGT Elmore, Officer Hoofer, and Officer Rosenboom at the Quik Trip at 31st S. and K-15 and they drove over to 4092 E. Dunham St. at approximately 4:30 PM. SGT Elmore reminded Snyder that WPD Officers were there so she could safely get her belongings and if there was no cooperation from anyone at the house they would have to leave. Snyder went up to the door with her key, but she knocked on the door. When she knocked, the door came open and SGT Elmore observed a female, identified as Arthenia Wells, sitting on the couch in the living room. Snyder walked in the house. SGT Elmore asked Wells if they could come in and she said she did not live there and was not comfortable with them coming inside. SGT Elmore knew this to be Snyder's residence and told Wells that Snyder was there to collect her belongings and then they would leave. SGT Elmore asked Wells if anyone else was in the house. Wells hesitated and then said no. This gave SGT Elmore concern that someone was in the house. Due to the threats made by Kyles, and the possibility of the person called by Kyles to let his dogs out, SGT Elmore was concerned about someone else may be in the house that may want to harm Snyder. For this reason, SGT Elmore stepped inside the house to keep an eye on Snyder while she looked for her

5

belongings. Snyder began the search of her belongings within the residence. When Snyder went into the bedroom just off the living room, she tried the combination on a black metal safe—**SUBJECT SAFE**—within the room. Snyder said she thought her Identification items may be inside. The combination did not work, and Snyder said Kyles must have changed the combination number.

13.    Snyder went to the kitchen and looked in a cardboard box that was on top of a washing machine. She pulled out an oblong object wrapped in green plastic wrap. Snyder said it was meth. She reached back in the box and pulled out another oblong object wrapped in clear plastic and said it was also meth. Snyder also smelled this object. Snyder reached back in and pulled out a gallon size zip lock baggy with a white powdery substance inside. Snyder also showed me a small black digital scale that she removed from the box. She placed these items back in the box.

14.    SGT Elmore immediately recognized these objects to be consistent with the packaging and appearance of illicit drugs. Also, Snyder said these objects were methamphetamine. For these reasons SGT Elmore seized the box of drugs and placed them in the back of my vehicle. Snyder remained in the house with Officer Hoofer.

15.    SGT Elmore returned into the house and Snyder was still in the kitchen. Snyder reiterated again to SGT Elmore that she believed her Identification materials were in the **SUBJECT SAFE** in the bedroom. SGT Elmore knew persons that distribute narcotics commonly keep drugs, money, guns, and documents in safes in their homes. For this reason, SGT Elmore

6

seized the **SUBJECT SAFE** from the bedroom and placed it in the back of his car pursuant to a search warrant application. SGT Elmore gave his card to Wells and advised her to give it to others that stay at the house and advised them Wichita Police Department took their belongings. WPD Officers left and drove back to QT.

16.    After this SGT Elmore interviewed Snyder. Snyder told SGT Elmore she lived at 4092 E. Dunham St. for about the last 3.5 to 4 months. Snyder provided SGT Elmore with the key to the house and said she no longer needed it. Snyder said she went to the house today to get her belongings. She looked in the box in the kitchen because she thought her Identification or other belongings were maybe in the box. Instead, Snyder found the methamphetamine. Snyder said there may also be cocaine and fentanyl in the box since she knew Kyles to deal those drugs too. Snyder said Kyles keeps ID's, social security cards, birth certificates, money, and a gun in the seized **SUBJECT SAFE**. The last time Snyder saw the gun in the **SUBJECT SAFE** was on 11/23/2023. Snyder described the gun as a black and gold semi-automatic with a switch on it to make it fully automatic. She said it was loaded with a magazine and maybe "CZ" brand gun.

17.    Snyder said she knew Kyles to be a felon that is not allowed to possess firearms The last time Snyder saw Kyles with drugs was last Friday, 11/24/2023. According to Snyder, Kyles was in the house at the kitchen table weighing out some methamphetamine that he took from the aforementioned box seized by SGT Elmore. Snyder left the house shortly after that and went to a shelter. Snyder said the rifle that she found in the kitchen was behind the washing machine. Snyder knew that rifle to be registered to Kyles' ex-girlfriend, Keri Key. Snyder said Kyles uses

7

this gun to answer the door and also had it when he threatened to shoot a man named "Hubby B" that owed Kyles $500.

18. After interviewing Snyder QT, SGT Elmore drove directly to property and evidence and submitted items seized, to include the **SUBJECT SAFE**.

19. Kyles was released from jail that same night, November 30, 2023, at approximately 8:12 PM.

20. Forensic Laboratory results for the seized narcotics were completed April 7, 2025, and confirmed that the substances tested positive for methamphetamine and cocaine. Additionally, Laboratory analysis confirmed that Kyle's fingerprints matched fingerprints that were located on some of the materials that contained the narcotics found at 4092 E. Dunham St. on 11/30/2023.

21. On October 29, 2025, Det McKee went to the WPD's property and evidence section to take photographs of the **SUBJECT SAFE**. Detective McKee contacted property and evidence staff and provided the case number for the case. The staff walked Detective McKee to the storage area and pointed out the **SUBJECT SAFE** that was stored on a shelf. Detective McKee removed the **SUBJECT SAFE** from the shelf and placed it on a table for examination. The **SUBJECT SAFE** was packed in a brown cardboard box and marked with the appropriate case number. Detective McKee observed that the original seal was intact and appeared to be in the same condition as when it was submitted. Detective McKee cut open the box and removed the black in color metal **SUBJECT SAFE** that was locked and secured. Detective McKee took several photos

8

of the **SUBJECT SAFE** before repacking it in the same brown box and sealing it with evidence tape.

22.     On November 13, 2025, Kyles was arrested on an unrelated case, however during a post-*Miranda* interview he was asked briefly about the case memorialized in this affidavit. Detective Chris Hehemann of the Sedgwick County Sherrif's Office asked Kyles about the four pounds of dope (methamphetamine) with his fingerprints that were found in his house. Kyles denied ownership of the drugs and said that the drugs belonged to a girl from Arizona that he was messing with and that she handed him the drugs that she had over at his house. Subsequent to Kyles arrest and after he was released from jail, Detective McKee attempted to contact Elliott Kyles by telephone in an effort to speak with him about the **SUBJECT SAFE**. Detective McKee had multiple phone numbers listed for Kyles including one that he had just recently provided to law enforcement the week prior. Detective Mckee called all of these numbers, multiple times, with no answer to any call. The phone numbers were either disconnected or rang with no option to leave a voicemail. To date, Kyles has made no demands for the return of the **SUBJECT SAFE.**

23.     Additionally, on that day DEA Special Agent Gage Teberg, along with ATF and WPD executed a search warrant of 4560 S Hydraulic Ave., Lot C36, Wichita, KS 67216, the then current residence for Kyles.  The warrant was associated with a Sedgewick County Sheriff's Office case.  During the search, SA Teberg observed firearm ammunition located within the master bedroom of the residence.

9

24.     Investigators conducted a search of Kyles' criminal history and learned that on November 29, 2016, a jury found Kyles guilty of aggravated battery and criminal possession of a firearm in Wyandotte County, Kansas. Kyles was subsequently sentenced to 68 months imprisonment in the Kansas Department of Corrections.

25.     The **SUBJECT SAFE** is currently in the lawful possession of the WPD, where it is stored securely within the property and evidence section. I seek a warrant out of an abundance of caution to be certain that an examination of the device will comply with the Fourth Amendment and other applicable laws.

## CONCLUSION

26.     I submit that this affidavit supports probable cause for a warrant to search the **SUBJECT SAFE** described in Attachment A and seize the items described in Attachment B.

Respectfully submitted,

_Gage Teberg_

Gage Teberg
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me
on January 13, 2026:

UNITED STATES MAGISTRATE JUDGE

10

## ATTACHMENT A

*Property to be searched*

The property to be searched is black safe, further described as a black safe with a keypad on the front and located at the Wichita Police Department property and evidence holding facility.





# **ATTACHMENT B**

*Property to be seized*

1. U.S. Currency or negotiable items; books, records, receipts and/or papers relating to the transportation, ordering, sale or distribution of substances in violation of State and Federal Controlled Substances Acts;

2. cellular telephone bills-records-itemized telephone call sheets, cellular telephones phone records;

3. records or lists of receipts, cash; bank account statements; or financial account statements;

4. safety deposit box keys and or records of existence;

5. tax records;

6. videos or photographs that depict use or possession of controlled substances and/or association with known and suspected drug traffickers;

7. records to indicate control/ownership of **SUBJECT SAFE**;

8. controlled substances, including methamphetamine, cocaine, and fentanyl;

9. firearms; and

10. drug paraphernalia.